## NEW YORK SUPERIOR COURT.

LUCIEN D. COMAN, respondent agt. WILLIAM H. STORM, appellant.

A person charged in execution in a civil cause, and held in custody by virtue thereof, is entitled to apply for a discharge from his imprisonment under 2d Revised Statutes, 31, article 6, as well where *he is on the limits* as in close custody. (*Bylandt* agt. *Comstock* [25 *How. Pr. R.* 429], *so far as it decides to the contrary, disapproved.*)

*Before* BOSWORTH, *Ch. J.*, and WHITE and MONELL, *JJ.*
*Heard November* 7; *decided November* 14, 1863.

APPEAL from an order. The facts are stated in the opinion of the court.

COOPER & HOWLAND, *for appellant.*
T. BURWELL, *for respondent.*

Coman agt. Storm.

By the court, Bosworth, Ch. Justice. This is an appeal by the defendant from an order denying his petition to be discharged from imprisonment under article six of 2d Revised States, 31, entitled " Of voluntary assignments by a debtor imprisoned in execution in civil causes." The petition was denied, because the defendant was on the limits pursuant to a bond given by him to entitle him to that privilege, and was not actually confined within the walls of the jail building.

The only question presented by the appeal is, whether the defendant is a person " *imprisoned*" within the meaning of that word as used in section 1 of the article above cited ?

The supreme court of this state, in 1802, *Holmes* agt. *Lansing* (3 *J. C.* 73 *and* 75, 76), and in 1810, in *Peters and others* agt. *Henry* (6 *J. R.* 121, 124), held that, under the statutes regulating the jail limits or liberties, the jails are " to be considered as enlarged from the four walls of the ancient law, to the assigned limits ; and so long as the prisoner is within those limits, so long he is to be considered, in judgment of law, as in prison." No different rule has been declared since then. Being placed and kept there by virtue of an execution, he is *imprisoned* by virtue of such execution.

The Revised Laws of 1813 were enacted with a knowledge of the decisions that the jail limits were, in judgment of law, but an extension of the walls of the prison, and that a debtor held in custody on execution was, in judgment of law, *imprisoned*, whether on the limits or in close custody.

Section four of the Laws of 1813 (*vol.* 1, 349) is in substance like the sixth article first above referred to. That section declares, that " if any person shall be *charged in execution*,  * *  and shall have remained in gaol the space of three calendar months,"  * *  he may present a petition to be discharged.

Article six of 2 R. S. 31, § 1, declares that " every per-

son * * who shall be *imprisoned* by virtue of one or more executions in civil causes, * * may at any time petition the court from which such process issued, * * for his discharge from imprisonment," &c. The substantial provisions of this article are like the provisions of section 4 of 1 R. L. 1813, p. 349. The revisors, in their notes, do not express any intention to change the law.

Article six (2 *R. S. p.* 33, § 16) declares that " when any person shall have remained charged in execution for the space of three months, after being entitled to make an application for his discharge," without having made any of the applications in that section specified, " any creditor" &c. may " *require such prisoner*" to apply. It is quite evident that the words, " charged in execution," are used in this section as synonymous with the word *imprisoned*, as used in the first section; and the person charged in execution is also described in section 16 as " such prisoner." The word "*prisoner*" does not appear in that section before or after the words " *such prisoner*," and these two words clearly indicate that a person charged in execution, whether in close custody or on the limits, is " *imprisoned*" within the meaning of this article.

Upon the construction that he is not *imprisoned*, unless in close custody, his creditors at whose suit he was charged in execution cannot proceed against him, as provided in sections 16 and 17 of that article.

The Revised Laws (*vol.* 1, *p.* 349, § 4) direct that " the court shall order the prisoner to be brought up upon a day to be assigned," and that the assignee to be appointed shall first pay " the fees due to the sheriff or gaoler in whose custody he was." The Revised Statutes (*p.* 32, § 6, *and p.* 33, § 15) contain like provisions.

I find nothing in either of these provisions indicating the view taken in *Bylandt* agt. *Comstock* (25 *How. Pr. R.* 431), that only a person in close custody can apply for a ·discharge.

The prisoner is ordered to be brought before the court, that a summary hearing may be had, and that he may be examined on oath, if that be desired. (2 *R. S. p.* 32, § 6.) If in close custody, the order enables him to be present at the hearing; if on the limits, the order enables an opposing creditor to compel his attendance.

The jail fees are to be first paid by the assignee, because the sheriff is required to discharge the prisoner on being served with the order for his discharge, " without any detention on account of any fees." (*Id.* § 11.)

If the jail liberties are to be regarded as merely an extension of the walls of the prison, and if persons charged in execution are to be regarded as in prison whilst on the limits, then they are clearly "imprisoned" whilst so held in custody.

That a person charged in execution in a civil cause, whether in close custody or on the limits, whilst held in custody by virtue of such execution, was entitled to apply for his discharge, has not heretofore been considered questionable. The practice has been to entertain their applications.

Whether they have given a limit bond or not, cannot be a matter of any consequence in respect to the question before the court.

The going at large within the limits or the liberties of the jail, whether the prisoner has or has not given a bond, is not an escape, if he be a person who would be entitled to the jail liberties on executing the prescribed bond. (3 *R. S. 5th ed.* 734, § 68.) He is, nevertheless, in judgment of law, *imprisoned* by virtue of the execution on which he was arrested and committed.

The decision in *Bylandt* agt. *Comstock* (*supra*), although strongly intimating an opinion that a person charged in execution, if admitted to the jail liberties, cannot apply, does not rest mainly on that ground, but rather on the ground of a loss of jurisdiction.

In proceedings under article 5, title 1 of chapter 5, part 2 of the Revised Statutes, the insolvent, if a discharge be granted to him, is to be discharged from imprisonment, whether in close custody or on the limits. The words of section 11 of that article are, that "if such insolvent be in *prison*, * * he shall be discharged therefrom on producing his discharge granted pursuant to the provisions of this article, and upon indorsing his appearance upon any mesne process upon which he may be imprisoned." Here the words are, "in prison." A person on the limits obtained a discharge under that article, and went without the limits. The discharge was held a bar to a suit on the limit bond. (*Hayden and others* agt. *Palmer aud others*, 24 *Wend.* 364.) The remarks of the court, that "although the 11th section of the act (2 *R. S.* 788) directs that if the insolvent be in prison, he shall be discharged therefrom *on producing his discharge*, it obviously was intended to apply to the case of close custody, and not where the prisoner is at large upon the limits," must not be understood as holding that only such prisoners as are in close custody can be discharged from imprisonment under that article. The contrary is decided by the case itself. The proposition stated is, that the *producing of the discharge* to the sheriff is only applicable to the case of a prisoner in close custody ; and the head note is to that effect. If a person is in *prison* while on the limits, then it is quite clear that he is *imprisoned.*

The act to abolish imprisonment for debt, passed April 26, 1831, in its 20th section provides that " every person imprisoned on civil process, at the time of this act taking effect as a law, in any case where, by the preceding provisions of this act, such person could not be arrested or imprisoned, shall be entitled to be discharged at the expiration of three months after this act shall take effect as a law," unless the creditor, at whose suit such person shall be imprisoned, make the application in that section spe-

cified, and prosecute it to the result there stated. Section 21 authorizes " every person imprisoned," as in section 20 specified, to give a notice to the creditors at whose suit he " is imprisoned," and present a petition and inventory as specified in sections 12 and 13 of that act. By section 13 the account of creditors and inventory of the estate are to be like those required by article 6 of title 1 of chapter 5 of part 2 of the Revised Statutes; and by section 14, fourteen days' notice of the time and place of presenting the petition is to be served. If a discharge be granted, the debtor has a right to be released from imprisonment, whether in close custody or on the limits. The idea that he is only entitled to be discharged from imprisonment if in close custody, but has no such right if on the limits, is against the avowed design and purpose of the statute, and, as it seems to me, clearly untenable. The supreme court considered its general application so clear, that, in *Russell* agt. *Carpenter* (9 *Wend.* 462), it ordered an *exoneretur* to be entered on the bail-piece. If, notwithstanding the debtor has obtained a discharge, the sheriff refuses to discharge him, the debtor, by section 46 of that act, may bring a writ of *habeas corpus* or *certiorari*, to obtain a discharge from custody.

We think it quite clear, that a person charged in execution and held in custody by virtue of it, whether within the walls of the jail building or on the limits, is in prison, and is a person *imprisoned*, within the meaning of that word as used in article 6 of 2d Revised Statutes, p. 31, and that the order appealed from should be reversed.

We doubt whether the court at general term can make an order which will reinstate the proceedings. It is, clearly, more safe for the defendant to begin *de novo*.

Order appealed from reversed.